IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**TEODOR MARIAN**,

    Plaintiff,

v.                                                                                                                No. 11cv970 RB/WDS

**SOCORRO ELECTRIC COOPERATIVE (SEC)**
**OF NEW MEXICO; LEOPOLDO PINEDA in**
**his individual capacity as General Manager at SEC;**
**KATY TORRES, in her individual capacity as**
**Office Manager/Accountant at SEC; EILEEN LATASSA,**
**in her individual capacity as Records Custodian at SEC;**
**MELISSA AMARO, in her individual capacity as**
**Collections Clerk at SEC; NEW MEXICO HUMAN**
**SERVICE DEPARTMENT (NMHSD); MARILYN**
**MARTINEZ, in her individual capacity as Quality**
**Improvement Section Manager, NMHSD; MELODY HODGE,**
**in her individual capacity as Clerk of Civil Rights**
**Dep't, NMHSD; LORETTA WILLIAMS, in her individual**
**capacity as LIHEAP Manager, NMHSD,**

    Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>
## <u>DISMISSING COMPLAINT</u>

**THIS MATTER** comes before the Court on pro se Plaintiff Teodor Marian's application to proceed *in forma pauperis* ("IFP"), filed October 31, 2011, *see* Doc. 2; and on the Court's concomitant obligation "to review the affidavit and screen [his] case under 28 U.S.C. §§ 1915(a) and (e)." *Lister v. Dep't Of Treasury*, 408 F.3d 1309, 1311 (10th Cir. 2005). The Court must dismiss the action "at any time if the court determines that" the plaintiff is, in fact, able to pay the filing fees and his "allegation of poverty is untrue," § 1915(e)(2)(A), or if the complaint "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." § 1915(e)(2)(B)(ii) (iii). *See Trujillo v. Williams*, 465 F.3d 1210, 1217 n.5 (10th Cir.

2006) (noting that dismissals under § 1915(e)(2)(A) & (B) are mandatory).

In screening Marian's complaint, the Court resolves the issue whether it states a claim on which relief may be granted by applying the same standards used in resolving motions to dismiss for failure to state a claim brought under FED. R. CIV. P. 12(b)(6).  *See Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007).  This means that the Court must

> look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief.  Rather than adjudging whether a claim is 'improbable,' factual allegations in a complaint must be enough to raise a right to relief above the speculative level.  In addition, [the Court] must construe a pro se [] complaint liberally.

*Id.* at 1218 (internal quotation marks, original brackets, and citations omitted).  In screening the Complaint, the Court will accept as true Marian's allegations and construe them, and any reasonable inferences to be drawn from them, in the light most favorable to Marian.  *See id.* at 1217.  But a court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged.  *See Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).  Further, in the wake of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009), courts must carefully scrutinize a plaintiff's complaint to determine if an actionable claim is asserted at all.  In *Twombly*, the Court noted that the pleading standard of FED. R. CIV. P. 8 does not require "detailed factual allegations," 550 U.S. at 555, but the Rule "demands more than an unadorned the defendant-unlawfully-harmed-me" account, *see Iqbal*, 129 S. Ct. at 1949.  The Court warned against pleadings that offer "labels and conclusions" or "a formulaic recitation of the elements of the cause of action . . . ."  *Id.* (internal quotation marks omitted).  These, the Court stated, "will not do." *Id.* (internal quotation marks omitted).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id*. (internal quotation marks and bracket omitted).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*.

The court should take a two-step approach in determining whether a complaint states a claim upon which relief may be granted. First, it "identif[ies] the [conclusory] allegations in the complaint that are not entitled to the assumption of truth." *Id.* at 1951. Then it only "consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." *Id.*; *see id.* at 1954 (rejecting the plaintiff's argument that he sufficiently stated a claim for relief by generally alleging that the defendants "discriminated against him 'on account of [his] religion, race, and/or national origin and for no legitimate penological interest,'" and stating, "[w]ere we required to accept this allegation as true, respondent's complaint would survive petitioners' motion to dismiss. But the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context.") (citations omitted).

Marian's Complaint does not set out sufficient facts to understand his alleged cause of action, so the Court has also reviewed the documents he attached to his Complaint. *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) ("In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also attached exhibits . . . and documents incorporated into the complaint by reference . . . .") (citation omitted). The Court has also taken judicial notice of other federal cases that Marian has filed, proceeding pro se and IFP. *See United States v. Ahidley*, 486 F.3d 1184, 1192 n. 5 (10th Cir. 2007) (stating, "we may exercise our discretion to take judicial notice of publicly-filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand").

Marian, a Romanian citizen who resides in California[1], *see* Compl. at 2, ¶ 1, brings his Complaint against an electric co-op, a state agency, and their employees for alleged violation of: (1) the Civil Rights Act of 1964, based on the Defendants' alleged discrimination against him because he resides in a state other than New Mexico; (2) the Freedom of Information Act; (3) 42 U.S.C. § 8624, which provides for federal funding through the states for Low Income Energy Assistance; (4) the Fourteenth Amendment of the United States Constitution; and (5) the New Mexico Constitution. *See* Compl. at 6-7.

Although he lives in California, Marian owns two lots at Quemado Lake in New Mexico. *See id.* at 3, ¶ 4. He built a "temporary plywood cabin" on one of the lots and stays there for as many as 10 days between 2 and 6 times/year. *See id.* at 12, ¶ 42; *id.*, Att. 6 at 7. Unhappy with a $6.00/month increase in the "system charge" on his electric bill for the property, Marian refused to pay his electric bills after April 2008, *see* Compl. at 3, ¶ 9; *see also id.*, Att. 2 at 1 (Marian's complaint to the "New Mexico Public Regulation Commission"), after which he was warned that the electricity would be disconnected if he continued to fail to pay his bills. *See* Compl. at 4, ¶¶ 11-12; *see id.* Att. 2 at 9 (copy of delinquent notice showing last payment was April 2008 and warning of consequences of non-payment). Marian asked for an electric co-op employee to send him an

---

[1] Marian "emigrated to the United States from Romania. . . . [Marian] renounced his United States citizenship in favor of 'state citizenship.' He believed that this exempted him from federal law, including his obligation to pay federal taxes." *Marian v. Gebhart* 2001 WL 1230826, *1 (Cal. App. 2 Dist. Oct. 15, 2001) (unpublished), *review denied* Jan. 29, 2002. Marian attaches to his Complaint copies of his frivolous "freeman" identification card and propaganda about the citizenship theories, *see* Compl., Att. 1 at 2, 5-6, to which Marian has unsuccessfully adhered in the past, and that are promulgated and promoted by Richard J. McDonald. McDonald has been convicted of willfully failing to file federal tax returns based on his frivolous arguments that he "is a state citizen, [therefore] the United States government lacks the constitutional authority both to subject him to federal tax laws and to prosecute him for failing to comply with these laws." *United States v. McDonald*, 1990 WL 186103, *1 (9th Cir. 1990).

application for financial assistance from the state's Low Income Home Energy Assistance Program ("LIHEAP"), but she did not do so until January 2009, after the co-op had disconnected his service on November 13, 2008 for failing to pay his past-due bills of $56.36.  *See* Compl. at 8, ¶ 25; *id.*, Att. 3 at 3-4 & Att. 5 at 1.  Marian contends that the SEC violated all kinds of rights by disconnecting his electrical service for non-payment and by not timely sending the LIHEAP application to him.

But Marian's Complaint and attachments shows that he had already filed a LIHEAP application with the NM Human Services Department in October, 2008, which was denied because Marian was not occupying a New Mexico residence at the time of application.  *See* Compl. at 5, ¶¶ 15, 17; *id.*, Att. 2 at 1 (complaining that the electric co-op and Human Services Department "recklessly discriminat[ed]" against property owners who "are not living there on the property or are not citizens of New Mexico"); *see id.* at 4 (copy of Marian's October 14, 2008 LIHEAP application); *id.* Att. 3 at 1 (November 13, 2008 letter from the New Mexico Human Services Department explaining to Marian that, under the LIHEAP policy, to be eligible for financial assistance, the applicant "must have a residence in New Mexico and be occupying that residence at the time of application," and that, since Marian resides in California, he does not qualify for assistance in New Mexico).

Marian contends that this policy improperly discriminates against non-state-residents in violation of Title VII, but there is no state or federal constitutional right to be given financial assistance to pay electric bills, especially for bills related to investment or recreational properties. Nor does Title VII prohibit discrimination based upon residency in qualifying for a state's low-income assistance programs.

Further, the Court has examined the federal statutes regarding Low Income Energy

Assistance, and nowhere do they prohibit discrimination based upon state residency. *See* 42 U.S.C. § 8625 (a) (providing that "[n]o person shall on the ground of race, color, national origin, or sex be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any program or activity funded in whole or in part with funds made available under this subchapter. Any prohibition against discrimination on the basis of age under the Age Discrimination Act of 1975 [42 U.S.C.A. § 6101 et seq.] or with respect to an otherwise qualified handicapped individual as provided in section 794 of Title 29 also shall apply to any such program or activity."). Further, there appears to be no private right of action under these federal statutes. Instead, if it appears that a state has violated the anti-discrimination provisions, "the Attorney General may bring a civil action in any appropriate United States district court for such relief as may be appropriate, including injunctive relief." 42 U.S.C. § 8625(c).

The Court notes that the Freedom of Information Act ("FOIA") applies only to certain federal agencies, *see* 5 U.S.C. § 551(1), thus Marian has failed to state a cognizable FOIA claim. Finally Marian has failed to state sufficient facts to support a cause of action of any kind against any of the individuals named in his Complaint. *See* Compl. at 7, ¶ 22 (stating only that Defendant Eileen Latassa responded to his request for records but failed to provide them); *id.* at 8, ¶ 25 (stating only that Defendant Melissa Amaro told Marian "by phone" that the co-op had disconnected the electricity to the Quemado property); *id.* at 9, ¶ 27 (stating only that Defendant Kathy Torres told Marian that there were no records between the co-op and Marian, and when he told her that her response was "obstruction of justice," she hung up the phone); *id.* at 9-10, ¶¶ 29-30 (stating only that Leopoldo Pineda, the co-op's manager, failed to respond to Marian's complaints to his satisfaction, and failed to provide records that Marian requested). The Complaint is devoid of allegations

6

regarding Marilyn Martinez, Melody Hodge, and Loretta Williams.

The Court concludes that Marian has failed to state a cognizable federal claim and that his Complaint must be dismissed under § 1915(e)(2)(B)(ii) and *Trujillo*. Marian is warned that if he continues to attempt to file frivolous complaints proceeding IFP, filing restrictions may be imposed against him.

**NOW, THEREFORE, IT IS ORDERED** that Marian's application to proceed IFP (Doc. 2) is DENIED, and that his Complaint is dismissed without prejudice.

*/s/ Robert Brack*

**ROBERT C. BRACK**
UNITED STATES DISTRICT JUDGE